**FILED IN OPEN COURT**
JACKSONVILLE, FLORIDA

5/16/19

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:18-cr-180-J-39PDB

DANIEL BUTLER
a/k/a "Flame"

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Maria

Chapa Lopez, United States Attorney for the Middle District of Florida, and the

defendant, DANIEL BUTLER, and the attorney for the defendant, Zachary L.

Riback, Esq., mutually agree as follows:

**A.    Particularized Terms**

**1.    Counts Pleading To**

The defendant shall enter a plea of guilty to Counts One and Five of

the Indictment.  Count One charges the defendant with conspiracy to commit wire

fraud, in violation of 18 U.S.C. § 1349.  Count Five charges the defendant with

aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

**2.    Mandatory Minimum and Maximum Penalties**

Count One carries a maximum sentence of up to 20 years'

imprisonment; a fine of $250,000, twice the gross gain caused by the offense, or

Defendant's Initials           AF Approval _BJL_

twice the gross loss caused by the offense, whichever is greatest; a term of imprisonment and a fine; a term of supervised release of not more than three years; and a special assessment of $100.  In the event the Court finds a violation of the terms and conditions of supervised release, the Court may impose an additional term of imprisonment of not more than two years, as well as an additional term of supervised release.

Count Five carries a mandatory sentence of two years' imprisonment to be served consecutively to any other term of imprisonment imposed on the defendant under any other provision of law; a fine of $250,000, twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greatest; a term of imprisonment and a fine; a term of supervised release of not more than one year; and a special assessment of $100.  In the event the Court finds a violation of the terms and conditions of supervised release, the Court may impose an additional term of imprisonment of not more than one year, as well as an additional term of supervised release.

The cumulative penalties for Counts One and Five are a mandatory minimum term of imprisonment of two years, a maximum term of imprisonment of 22 years, a fine of $500,000, twice the gross gain caused by the offenses, or twice the gross loss caused by the offenses, whichever is greatest; a term of imprisonment and a fine; a term of supervised release of not more than three years; and a special

Defendant's Initials _DB_                    2

assessment of $200. In the event the Court finds a violation of the terms and conditions of supervised release, the Court may impose an additional term of imprisonment of not more than three years, as well as an additional term of supervised release.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

### 3.   Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:    that two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the Indictment; and

Second:    that the Defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of Count Five are:

First:    the Defendant knowingly transferred, possessed, or used another person's means of identification;

Two:    the Defendant did so without lawful authority; and

Third:    the Defendant did so, during and in relation to the wire fraud conspiracy and access device fraud alleged in the Indictment.

Defendant's Initials _DB_                3

4.     **Count Dismissed**

At the time of sentencing, the remaining count against the defendant, Count Four, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.     **Mandatory Restitution to Victim of Offense of Conviction**

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make restitution in the amount of $513,462.40 to Capital One Financial Corporation.

6.     **Acceptance of Responsibility - Three Levels**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The

Defendant's Initials _DB_               4

defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. **Adjusted Offense Level - Estimate Only**

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), for the purpose of calculating an advisory sentencing range for Count One, the United States estimates, based on the information now available to it, that the defendant's adjusted offense level is 18, as determined below:

| Guideline | Description | Levels |
|---|---|---|
| USSG §§ 2X1.1, 2B1.1(a) | Base Offense | 7 |
| USSG §2B1.1(b)(1) | Loss More than $250,000 | 12 |
| §2B1.1(b)(2)(A)(i) | 10 or More Victims | 2 |
| USSG §3E1.1 | Acceptance of Responsibility | 3 |
| Total Adjusted Offense Level | | 18 |

The defendant understands that this estimate is not binding on the Court, Probation Office, or the United States, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.   **Low End**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9.   **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, at least $513,462.40 in proceeds the defendant admits he obtained, as the result of the commission of the offense, 18 U.S.C. § 1349, to which the defendant is pleading guilty. The defendant consents to the filing of a motion by the United States for entry of an Order of Forfeiture of proceeds.

The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offense(s), and (2) as a

Defendant's Initials _DB_                    6

result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.  Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction.  The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s).  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4),

Defendant's Initials _DB_                    7

the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's

Defendant's Initials _DB_                    8

sentencing.  In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials _DB_                    9

**B.**   **Standard Terms and Conditions**

**1.**   **Restitution, Special Assessment, and Fine**

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _DB_                    10

2. **Supervised Release**

The defendant understands that the offenses to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. **Immigration Consequences of Pleading Guilty**

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    **Financial Disclosures**

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to

evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

### 6.    <u>**Sentencing Recommendations**</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _DB_                13

7.     **Defendant's Waiver of Right to Appeal the Sentence**

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    **Filing of Agreement**

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty,

Defendant's Initials _DB_            15

defendant waives or gives up those rights and there will be no trial.  The defendant

further understands that if defendant pleads guilty, the Court may ask defendant

questions about the offense or offenses to which defendant pleaded, and if

defendant answers those questions under oath, on the record, and in the presence

of counsel (if any), defendant's answers may later be used against defendant in a

prosecution for perjury or false statement.  The defendant also understands that

defendant will be adjudicated guilty of the offenses to which defendant has pleaded

and, if any of such offenses are felonies, may thereby be deprived of certain rights,

such as the right to vote, to hold public office, to serve on a jury, or to have

possession of firearms.

### 11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The

defendant certifies that defendant does hereby admit that the facts set forth in the

attached "Factual Basis," which is incorporated herein by reference, are true, and

were this case to go to trial, the United States would be able to prove those specific

facts and others beyond a reasonable doubt.

### 12.   Entire Agreement

This plea agreement constitutes the entire agreement between the

government and the defendant with respect to the aforementioned guilty plea and

no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

**13.   Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___3___ day of ___May___, 2019.


MARIA CHAPA LOPEZ
United States Attorney


_____
DANIEL BUTLER
Defendant


_____
MICHAEL J. COOLICAN
Assistant United States Attorney


_____
ZACHARY L. RIBACK .
Attorney for Defendant


_____
KELLY KARASE
Assistant United States Attorney
Deputy Chief, Jacksonville Division


Sean Clayton
Attorney for Defendant


Defendant's Initials ___DB___                17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:18-cr-180-J-39PDB

DANIEL BUTLER
    a/k/a "Flame"

## <u>PERSONALIZATION OF ELEMENTS</u>

<u>Count 1</u>

1.    Do you admit that beginning in or about December 2014,
continuing through in or about May 2016, you, with one or more other
persons, in some way or manner, agreed to try to accomplish a common and
unlawful plan to commit wire fraud in the Southern District of Florida and
the Middle District of Florida, as charged in the Indictment?

2.    Did you know the unlawful purpose of the plan and willfully
join in it?

<u>Count 5</u>

1.    Do you admit that, on or about December 17, 2015, in the
Middle District of Florida, you knowingly transferred, possessed, and used

Defendant's Initials 

another person's means of identification, specifically, C.R.'s name and credit card account numbers?

2.    Do you admit that you did so without lawful authority?

3.    Do you admit that you did so during and in relation to the wire fraud conspiracy alleged in Count One of the Indictment and access device fraud alleged in Count Four of the Indictment?

Defendant's Initials _DB_                    2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:18-cr-180-J-39PDB

DANIEL BUTLER
a/k/a "Flame"

## FACTUAL BASIS

Apple Pay is a consumer mobile payment service. By associating a credit card account with an Apple iPhone, a user of Apple Pay can use his or her iPhone to pay for merchandise at certain retail locations. When a user attempts to associate a credit card account with a phone, Apple Pay electronically sends via wire communication certain account information (including the account holder's name and account number) to the card issuer. In turn, the card issuer can elect to approve adding that particular credit card account to the Apple Pay service. After successfully associating a credit account with a phone, an Apple Pay user can make credit card purchases using the phone without presenting the credit card to a retailer. Specifically, to complete a purchase, the user brings the phone within close proximity to a retailer's specially-equipped point-of-sale system and then satisfies the phone's authentication feature (typically a fingerprint or a passcode). Making a purchase (or attempting to do so) results in an electronic wire communication between the retailer and relevant credit card issuer.

Defendant's Initials 

Capital One Bank issues and maintains credit cards and associated accounts. It permits its cardholders to associate their accounts with phones through Apple Pay. To verify that the Apple Pay users are actually Capital One cardholders, users must either call Capital One and answer authentication questions or load Capital One's mobile banking application on their phones and then enter certain unique cardholder information. That information is then electronically transmitted back to Capital One. Capital One's transactional data is maintained on computer servers located in the State of Georgia, and other account information resides on separate servers in the State of Virginia. As such, an Apple Pay user making a purchase in the State of Florida with a Capital One credit card account causes an interstate wire communication to occur.

Beginning no later than December 2014, continuing through in or about May 2016, the defendant, Daniel Butler (also known as "Flame"), was a member of a fraud ring that gained access to Capital One credit card account information and then fraudulently used the accounts to make purchases. Using the iPhone's Apple Pay application, the defendant and others were able to make credit card purchases in person without the need to present credit cards.

In a related case (3:17-cr-6-J-39JBT), Rachel Bishop has pleaded guilty to conspiracy to commit wire fraud pursuant to a cooperation plea agreement and has explained to law enforcement how the scheme worked. According to Bishop, she

Defendant's Initials _DB_        2

was an associate of the defendant, and he had access to personal identifying information (or PII) of Capital One cardholders. The defendant would call Capital One, use the PII to pose as a cardholder, and convince the bank to make changes to the account. Such changes then permitted the defendant, Bishop, and other "runners" from South Florida to take control of the account and associate a credit card with their iPhones via Apple Pay. They would then take road trips (individually or in pairs), driving along the interstates and exiting to buy prepaid debit cards at retailers, such as Walgreens Pharmacies. Bishop made fraudulent purchases at stores in the Middle District of Florida, including in Duval and Saint Johns Counties.

Bishop knew that the defendant was friends with Laurent Pierre Louis and Max Johnny Wesley, and she understood that they also were involved in the fraud. Pierre Louis is the co-defendant in this case and is also known as "Slim." Wesley was the defendant in another related case (docket number 3:18-cr-14-J-39JBT) and has since pleaded guilty to being a member of the conspiracy charged in the present case. When Wesley pleaded guilty, he admitted to participating in the scheme for more than a year and that over 400 accounts were involved.

On October 2, 2018, FBI Special Agents interviewed a former romantic partner (Co-Conspirator A) of the defendant. Co-Conspirator A stated that Co-Conspirator A only knew the defendant by the name "Mike Jones." Co-

Defendant's Initials _DB_          3

Conspirator A stated that in 2016 or 2017, Co-Conspirator A and the defendant took a day trip from Miami, Florida to Orlando, Florida. While Co-Conspirator A drove, the defendant made multiple phone calls to a credit card issuer to obtain access to cardholder accounts.

According to Co-Conspirator A, during the calls with customer service representatives, the defendant used a laptop to look-up names and PII for cardholders to answer the challenge questions posed by representatives to verify the cardholder's identity.  Co-Conspirator A explained the calls sounded like normal calls that customers would make to a credit card company regarding their account, but the defendant would disguise his voice to sound like a woman, if he was attempting to gain access to an account associated with a woman.  According to Co-Conspirator A, on one occasion, Co-Conspirator A assisted the defendant during a call with a customer service representative by impersonating the wife of the true cardholder so that the defendant could gain access to the cardholder's account.

Co-Conspirator A told the agents that after arriving in Orlando, the couple made several stops at retailers such as Walgreens, Staples, and Office Depot to purchase gift cards using the Apple Pay application.  The defendant also configured Apple Pay on Co-Conspirator A's iPhone so Co-Conspirator A could go inside stores and purchase gift cards.

Defendant's Initials _DB_               4

According to Co-Conspirator A, prior to returning to Miami, Co-Conspirator A drove the defendant to a grocery store and the defendant used the gift cards to obtain money orders.

Co-Conspirator A stated that on one occasion, Co-Conspirator A took a trip without the defendant to conduct Apple Pay fraud in West Palm Beach, Florida. The defendant provided cardholder information to Co-Conspirator A by way of cellular telephone communication and Co-Conspirator A entered the data into the Apple Pay application. Co-Conspirator A went to several retailers and purchased gift cards using Apple Pay. According to Co-Conspirator A, after exiting the retailers, Co-Conspirator A would call the defendant to advise him that the purchase was complete. At times, the defendant would text Co-Conspirator A new account information to enter into the Apple Pay application and the defendant would locate a new retailer where Co-Conspirator A could purchase gift cards.

In connection with this case, Capital One records establish that at least 477 Capital One accounts have been fraudulently used to make Apple Pay purchases. The actual losses resulting from the fraudulent use of these accounts, between November 2014 and May 2016, are approximately $1,502,035.00. Analysts have reviewed records of calls making inquiries related to those 477 accounts. After excluding the legitimate cardholders' phone numbers, there are ten common

Defendant's Initials _DB_                    5

telephone numbers that called Capital One that are associated with known individuals: Bishop, Wesley, Pierre Louis, and the defendant.

Information provided by Bishop, extracted from her phone, and seen on Wesley's phone all establish that three of these ten numbers are associated with the defendant. According to toll analysis, these three numbers were frequently used to call Capital One, but also to call and receive calls from phone numbers associated with Bishop, Wesley, Pierre Louis, and Co-Conspirator A.

Both Co-Conspirator A and the FBI Special Agents who have interviewed the defendant are familiar with his voice. Co-Conspirator A and these agents have recognized the defendant's voice on recorded calls with Capital One representatives. During those recorded calls, the defendant can be heard attempting to convince representatives that he is the legitimate cardholder of a Capital One account (sometimes successfully, sometimes not).

Of the approximately 157 Capital One accounts that received inquiries from the three phone numbers associated with the defendant, the actual losses total approximately $513,462.40. These losses stem from more than 1,200 fraudulent transactions made between November 2014 and April 2016.

Business records, coupled with surveillance video of the defendant and an associate (Co-Conspirator B), establish that between December 17, 2015 and January 23, 2016, the pair used the Apple Pay application and the Capital One

Defendant's Initials _DB_          6

credit card accounts of C.R., to make more than $1,000 in fraudulent purchases at Walgreens stores, including at stores in Marion County in the Middle District of Florida. Purchases from Walgreens (a nationwide business) using credit from Capital One (another nationwide business) affect interstate commerce. C.R. is an actual person and did not give the defendant permission to use C.R.'s name or Capital One account numbers. Again, as part of the process of associating C.R.'s credit card account with Apple Pay to make Apple Pay purchases, the defendant had to provide Apple, Inc. with C.R.'s name and account number, both of which are means of identification.

Business records and surveillance videos further establish that in January 2016, the defendant drove Co-Conspirator B to retailers where Co-Conspirator B used Apple Pay and the Capital One account of S.B. to make fraudulent purchases, including purchases in the Middle District of Florida. Again, this account holder is an actual person who did not give the defendant or Co-Conspirator B permission to use the account or means of identification.

On October 16, 2018, the defendant agreed to be interviewed by FBI Special Agents following his arrest in this case. The defendant explained that Apple Pay fraud began while he was incarcerated in connection with another case, and that only after his release, Bishop recruited him to get involved. According to the defendant, he was not the individual responsible for purchasing credit card

Defendant's Initials _DB_                    7

information as part of the scheme, but rather, someone else had acquired the information prior to his release from prison. The defendant stated each individual in the Apple Pay fraud scheme had their own source of information and "everyone did their own thing." According to the defendant, there was not a leader or organizational structure associated with the group.

When the agents advised the defendant of Capital One's total monetary loss and the monetary losses that the agents attributed to each individual co-conspirator in the fraud scheme, the defendant indicated their statements were not accurate. He reiterated that he was not a leader of the Apple Pay fraud scheme, and that the fraud began prior to his release from prison. According to the defendant, others conducted more fraudulent transactions than he, and the transactions made by others spanned a longer period.

The defendant confirmed that he and Pierre Louis were friends, but stated that they did not provide money to each other or use each other's bank accounts. After reviewing a graphical representation of his top telephone contacts to and from one of his phone numbers reference above, the defendant stated that the calls between him and Co-Conspirator A were of a different nature than the calls between him and Bishop. The defendant further explained that Co-Conspirator A participated in Apple Pay fraud fewer than five times.

Defendant's Initials _DB_                8